# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

PAUL WILLIAM PILGER,            )
                                )
   Plaintiff,             )
 vs.                           ) Case No.: 2:11-cv-00159-GMN-PAL
                                )
UNITED STATES DEPARTMENT OF     ) **ORDER**
EDUCATION, et al.               )
                                )
   Defendants.            )
_____)

  Pending before the Court is the Motion for Summary Judgment (ECF No. 23) filed by Defendant Arne Duncan, Secretary of the United States Department of Education ("DOE"). *Pro se* Plaintiff Paul William Pilger ("Pilger") filed a Response (ECF No. 25), and the DOE filed a Reply (ECF No. 27).

  Also before the Court are Pilger's motion styled as a "Motion to Request Denial of Defendant DOE's Motion for Summary Judgment" (ECF No. 26), and Pilger's Ex Parte Motion for Status Check (ECF No. 29). The DOE did not respond to either of these motions.

## I. BACKGROUND

  In May 2007, Pilger began requesting that the DOE forgive the federally subsidized student loans that Pilger used to finance his education at Trinity University Law School. (Am. Compl. ¶ 21, ECF No. 4.) Pilger attended Trinity Law School ("Trinity") in California from 1995 to 1999. (*Id.* at ¶ 17.) Pilger graduated and received his law degree from Trinity in 1999. (Compl. ¶ 21, ECF No. 3.) However, Pilger has not yet taken the bar examination in any state, in part, because Trinity's status as unaccredited by the American Bar Association ("ABA") precludes Pilger from taking the bar examination in most states. (Am. Compl. ¶ 19, ECF No. 4.) However, California does allow graduates of unaccredited law schools to take the bar exam and

become licensed attorneys, if those graduates have taken and passed the First Year Law Students' Exam ("FYLSX")[1] after their first year of law school studies. (Compl. ¶ 18, ECF No. 3.)

After beginning his studies at Trinity, but before applying for the federally subsidized loans at issue, Pilger was diagnosed with a learning disability after an examination at the Fuller Psychological Center in Pasadena, California. (*Id.* at ¶ 19, 20.)  After this diagnosis, Pilger contacted the California Committee of Bar Examiners ("Bar Examiners") seeking a "special accommodation of extended time during the administration of the FYLSX." (*Id.* at 19.) However, the Bar Examiners denied Pilger's request and did not grant the requested accommodation. (*Id.* at ¶ 20.)  Thereafter, Pilger took and failed the FYLSX. (*Id.* at ¶ 21.) Nevertheless, Pilger continued his law studies. (*Id.* at ¶ 21.)

During Pilger's subsequent pursuit of a special accommodation for a subsequent administration of the FYLSX, Pilger sought assistance from the United States Commission on Civil Rights and the United States Department of Justice. (*Id.* at ¶ 22.)  Pilger also states that, eventually, he participated in a class action lawsuit against the Bar Examiners in the United States District Court for the Northern District of California. (*Id.* at ¶ 23, 24.)  Pilger further states that the Northern District of California ultimately ordered that the Bar Examiners modify their accommodation review process. (*Id.* at ¶ 24.)  Thereafter, Pilger reapplied for the FYLSX and, once again, sought an accommodation (*Id.* at ¶ 27.)  In response, the Bar Examiners granted Pilger a partial accommodation. (*Id.* at ¶ 28.)  Specifically, Pilger was granted one third extra time on the essay portion of the FYLSX, but no additional time for the multiple choice portion. (*Id.* at ¶ 28.)  Pilger once again took and failed the FYLSX. (*Id.* at ¶ 29.)

---

[1] The FYLSX is also referred to as the "Baby Bar." (Compl. ¶ 18, ECF No. 3.)

After Pilger failed the FYLSX the second time, Pilger relocated to Nevada with the intent to take the Nevada bar exam and work as an attorney in Nevada. (*Id.* at ¶ 31.) However, in Nevada, students are eligible to take the bar exam only if that student graduated from an accredited law school or if the student shows that the unaccredited school is functionally equivalent to an ABA accredited law school. (*Id.* at ¶ 32.) Not only was Trinity not accredited by the ABA, Pilger failed to establish that Trinity was "functionally equivalent to an ABA accredited law school." (*Id.* at ¶ 32-33.) Thus, Pilger has not attempted to take the Nevada bar exam. (*Id.* at ¶ 34.)

Because of his difficulty in seeking admission to a state bar, Pilger decided to seek a discharge of his federally backed student loans. (Am. Compl. at ¶ 19, ECF No. 4.) Pilger applied to the holder of his loan (Affiliated Computer Services), the loan guarantor (Illinois Student Assistance Commission), and eventually to the DOE, seeking such a discharge. (*Id.* at ¶ 20-29.) Both the holder of the loan and the loan guarantor denied Pilger's application for a discharge and the DOE affirmed these decisions. (Def.'s Mot. Summ. J. 7:1-8, ECF No. 23.)

In response, Pilger filed this action seeking that the Court review the DOE's decision under the Administrative Procedure Act ("APA"), 5 U.S.C. § 706. (Am. Compl. at ¶ 42, ECF No. 4.) Subsequently, the Court dismissed both Affiliated Computer Services and the Illinois Student Assistance Commission, leaving the DOE as the only remaining Defendant in this case. (Order Granting Mot. to Dismiss Def. Affiliated Computer Servs., ECF No. 16; Order Granting Mot. to Dismiss Def. Ill. Student Assistance Comm'n, ECF No. 22.) Now before the Court is the DOE's motion for summary judgment, which the Court grants, and Pilger's motions challenging the motion for summary judgment and for status check, which the Court denies.

## II.   <u>LEGAL STANDARD</u>

Summary judgment is appropriate when the pleadings, the discovery and disclosure materials on file, and any affidavits "show there is no genuine issue as to any material fact and

that the movant is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986); *see generally* Fed. R. Civ. P. 56(a).  An issue is "genuine" if there is a sufficient evidentiary basis on which a reasonable fact-finder could find for the nonmoving party and a dispute is "material" if it could affect the outcome of the suit under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49 (1986).  "Summary judgment is inappropriate if reasonable jurors, drawing all inferences in favor of the nonmoving party, could return a verdict in the nonmoving party's favor." *Diaz v. Eagle Produce Ltd. P'ship*, 521 F.3d 1201, 1207 (9th Cir. 2008) (citation omitted).  "The amount of evidence necessary to raise a genuine issue of material fact is enough 'to require a jury or judge to resolve the parties' differing versions of the truth at trial.'" *Aydin Corp. v. Loral Corp.*, 718 F.2d 897, 902 (9th Cir. 1983) (quoting *First Nat'l Bank v. Cities Service Co.*, 391 U.S. 253, 288–89 (1968)).  In evaluating a summary judgment motion, a court views all facts and draws all inferences in the light most favorable to the nonmoving party.  *Kaiser Cement Corp. v. Fischbach and Moore, Inc.*, 793 F.2d 1100, 1103 (9th Cir. 1986).

When determining whether to grant a motion for summary judgment, a court applies a burden-shifting analysis.  "When the party moving for summary judgment would bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial.  In such a case, the moving party has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case." *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (citations omitted).  In contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *See Celotex Corp.*, 477

U.S. at 323–24.

Once the moving party carries the initial burden, the burden shifts to the party opposing the motion to "set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256.  The nonmoving party "may not rely on denials in the pleadings but must produce specific evidence, through affidavits or admissible discovery material, to show that the dispute exists," *Bhan v. NME Hosps., Inc.*, 929 F.2d 1404, 1409 (9th Cir. 1991), and "must do more than simply show that there is some metaphysical doubt as to the material facts." *Orr v. Bank of Am.*, 285 F.3d 764, 783 (9th Cir. 2002) (internal citations omitted).  "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient." *Anderson*, 477 U.S. at 252.  If, however, the moving party fails to meet its initial burden, summary judgment must be denied and the court need not consider the nonmoving party's evidence. *See Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 159–60 (1970).

### III. DISCUSSION

#### A. Procedure

The Court first notes that Pilger has failed to adequately respond to the DOE's Motion for Summary Judgment.  Pilger fails to provide a statement of undisputed facts, as required by Local Rule 56-1, and also fails to include any evidence of his claims.  Instead, Pilger uses his response merely to present a list of complaints regarding his experience with the judicial system. Specifically, Pilger complains about the difficulty he experienced in serving the parties in this case and expresses his frustration with a previous court order that explained time requirements for filing responses and explained that failing to respond could result in dismissal of his case.  However, Pilger's list of complaints is largely irrelevant to the motion for summary judgment.

On the same day that Pilger filed his Response to the DOE's Motion for Summary Judgment, he also filed a motion styled as a "Motion to Request Denial of the DOE's Motion for Summary Judgment."  The Court construes this motion as a response to the DOE's Motion for

Summary Judgment rather than a separate motion because the contents of this motion appear to respond to the DOE's motion.  Nonetheless, this response also lacks the required statement of undisputed facts and also wholly lacks evidence to support Pilger's claims.  Even so, the Court will consider Pilger's arguments in evaluating the DOE's motion.

### B.  Analysis

#### 1.  Administrative Procedure Act Claim

Under the APA, once an agency has taken "final agency action" a court reviewing that final action may only set aside the agency's decision if the decision is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A) (2006); *Native Village of Point Hope v. Salazar*, 680 F.3d 1123, 1129 (9th Cir. 2012).  Specifically, Pilger is seeking review of the DOE's decision that was made under the Federal Family Education Loan Program to challenge the DOE's denial of his application to discharge his federally subsidized student loans. 20 U.S.C. §§ 1071-1087 (2006).  Section 1087(c)(1) states:

> "If a borrower who received . . . a loan made, insured, or guaranteed under this part and . . . if such student's eligibility to borrow under part was falsely certified by the eligible institution . . . then the Secretary [of the Department of Education] shall discharge the borrower's liability on the loan (including interest and collection fees)."

Additionally, an agency's interpretation of its own regulations are "controlling unless plainly erroneous or inconsistent with the regulation." *Auer v. Robbins*, 519 U.S. 452, 461 (1997).  Here, the DOE previously promulgated 34 C.F.R. § 685.215, which governs the agency's decisions regarding which loans to discharge when the student claims that the loan was received as a result of such a false certification of the student's eligibility to borrow.  Section 685.215(a)(1)(iii) provides that:

/ / /

/ / /

> "The Secretary considers a student's eligibility to borrow to have been falsely certified by the school . . . [c]ertified the eligibility of a student who, because of a physical or mental condition, age, criminal record, or other reason accepted by the Secretary, would not meet the requirements for employment . . . in the occupation for which the training program supported by the loan was intended."

In this case, Pilger argues that Trinity falsely certified him because Trinity knew of his learning disability at the time that he applied for the federally subsidized student loans at issue. Because the DOE denied Pilger's request to discharge his federally subsidized student loans on the basis of this alleged false certification, Pilger is seeking review of the DOE's final agency action.

Because the DOE's denial of Pilger's request to discharge is a final agency action, the Court reviews the DOE's decision using the "arbitrary and capricious" standard of review. 5 U.S.C. § 706(2)(A). Review under this standard is "deferential" and "narrow." *Native Village of Point Hope*, 680 F.3d at 1129; *Or. Natural Res. Council v. Allen*, 476 F.3d 1031, 1036 (9th Cir. 2007) (citing *Marsh v. Or. Natural Res. Council*, 490 U.S. 360, 378 (1989)). Additionally, "[i]n applying [the arbitrary and capricious] standard, the focal point for judicial review should be the administrative record already in existence." *Camp v. Pitts*, 411 U.S. 138, 142 (1973). Generally, an agency decision is arbitrary and capricious "if the agency . . . entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise. *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983) (internal citations omitted). Moreover, courts will "uphold a decision of less than ideal clarity if the agency's path may reasonably be discerned." *Nat'l Ass'n of Home Builders v. Defenders of Wildlife*, 551 U.S. 644, 658 (2007) (internal quotations and citations omitted).

Here, the administrative record supports the DOE's decision, and thus the Court grants the DOE's Motion for Summary Judgment. First, the administrative record reveals the DOE

denied Pilger's request because his factual scenario fails to meet the requirements of discharge due to false certification under § 1087(c)(1).  Specifically, the DOE has interpreted its own regulations as providing the remedy of loan discharge to those students who procured loans to finance enrolling in a training program that was "so narrowly focused on a specific occupation that, for persons who are legally disqualified from employment in that occupation, such programs provide no benefit of any kind, either in terms of transferable educational credit or transferable occupational skills." (Def.'s Mot. Summ. J. 8:21-9:3, ECF No. 23 (citing 34 C.F.R. § 600.2).)  According to the DOE, a "recognized occupation" refers to a specific vocation, and not to general employability. (DOE Letter to Pilger dated Aug. 28, 2009 explaining the DOE's interpretation of the statute and its regulations, Ex. 5 to Def.'s Mot. for Summ. J., ECF No. 23.) Thus, this type of discharge does not apply to students, such as Pilger, who have pursued academic or advanced degrees, such as a law or medical degree, because these degrees support employment in a wide range of fields. *Id*; *see also Johnson v. U.S. Dept. of Education*, 580 F. Supp.2d 154, 157-58 (D.D.C. 2008) (accepting the DOE's interpretation of § 1087(c)(1) and its regulations as applying only to more limited educational programs than advanced degrees, and noting that paralegal training programs can also lead to employment as insurance claims adjusters, title examiners, appraisers, investigators, etc.).   Because the DOE's interpretation of its own regulation is "controlling unless plainly erroneous or inconsistent with the regulation," the Court accepts the DOE's sensible interpretations.  Accordingly, the Court grants summary judgment in favor of the DOE on Pilger's APA claim.

### 2. Remaining Claims

Pilger continues to claim that the dismissed Defendants (Illinois Student Assistance Commission and Affiliated Computer Services) failed to communicate with him and with the DOE within a timely manner thus violating the timing requirements in the loan discharge process. *See* 34 C.F.R. § 682.402(3)(7).   Even if these allegations are true, the statute and

regulations do not create a private right of action and, therefore Pilger's only avenue to challenge the DOE's action is under the APA. *See, e.g.*, *Neighbors of Cuddy Mountain v. Alexander*, 303 F.3d 1059, 1067 (9th Cir. 2002) (stating that because the statute did not "create a private cause of action to enforce its provisions, [the plaintiff was] limited to bringing a claim under the APA"). Moreover, these parties have already been dismissed either voluntarily or without Pilger's opposition.[2] Accordingly, the Court grants summary judgment on this claim. The Court also grants summary judgment on Pilger's injunctive relief claim because no underlying claims remain.

Finally, the Court denies Pilger's Motion for Status Conference, as moot. The Court's granting of summary judgment against Pilger in this order and dismissal of the case, renders the requested status check unnecessary.

## IV.  CONCLUSION

**IT IS HEREBY ORDERED** that Defendant DOE's Motion for Summary Judgment (ECF No. 23) is **GRANTED**.

**IT IS FURTHER ORDERED** that Pilger's Motion Requesting Denial of DOE's Motion for Summary Judgment (ECF No. 26) is **DENIED**.

**IT IS FURTHER ORDERED** that Pilger's Motion for Status Check (ECF No. 29) is **DENIED as moot**.

The Clerk of the Court is directed to close this case.

DATED this 23rd day of August, 2012.

_____
Gloria M. Navarro
United States District Judge

---

[2] Pilger moved to voluntarily dismiss Illinois Student Assistance Commission on October 21, 2011. (Mot. to Dismiss Co-Def. with Prejudice, ECF No. 17; Order Granting Mot. to Dismiss, ECF No. 18.) Affiliated Computer Services ("Affiliated") was dismissed as a defendant on October 20, 2011 after Pilger failed to oppose Affiliated's Motion to Dismiss. (Order Granting Mot. to Dismiss, ECF No. 16.) Notably, Pilger failed to respond to Affiliated's Motion to Dismiss even after the Court advised him of the requirement that his opposition to the motion be timely filed. (Minute Order, ECF No. 14.)